May it please the court, my name is Mary Jean Chan and I represent the United States in this appeal. I'd like to reserve three minutes for rebuttal. The district court erred in three ways. First, even if California law did not authorize a deputized U.S. marshal working on a joint federal-state task force to obtain and execute a state search warrant for the purpose of apprehending state fugitives under the Virginia v. Moore line of cases, that does not constitute a Fourth Amendment violation. Second, probable cause supported the search warrant in this case. And third, suppression was not an appropriate remedy because there was good faith. So first of all, the search warrants at issue here, both of them, the April 5th search warrant as well as the April 7th search warrants, are both invalid on their face, even under California law. They specifically are directed to any peace officer in Alameda County just as it is required under California law. There's nothing invalid about them facially. The only issue that the district court found that was erroneous was that Special Agent Carlson, who is a deputized U.S. marshal functioning on a state-federal joint task force, considered himself a peace officer for those purposes. And that was a reasonable conclusion and the correct conclusion. Under 28 U.S.C. 566 and 564, which is the federal regulations regarding the federal statutes regarding the U.S. marshals, a U.S. marshal is authorized to investigate fugitive matters. Yeah, but California gets to decide this question, not the United States, right? That's why I think your reliance on federal statutes is just not on point. No, we disagree. Here we have, certainly the Supremacy Clause plays a big role, which is to the extent that there is a conflict between those statutes and California law, which is an arguable question because the interpretation of the statutes by the district court, I think... I don't think the United States can tell the state of California, you must allow our officers to be treated as peace officers for purposes of your criminal justice system. I don't think that is... There's nothing in the Supremacy Clause that dictates that. No, that's exactly right, Your Honor. But the state judges didn't have to issue the warrants to Special Agent Carlson. The question is whether Special Agent Carlson... I think there are two issues. One, which is if the state judges made an error. And then there's another question about whether Special Agent Carlson, who is the deputized U.S. Marshal at issue, made an error. So those are two separate things. If the state judges shouldn't have issued the warrants to him, then they shouldn't have under state law. And then there's a separate question of whether that then constitutes a constitutional violation, that state law error. The separate question is whether Special Agent Carlson made an error. And we are saying that there was no error on his part because he was a deputized U.S. Marshal. So he had the authority and he had the belief that he could... Was basically empowered of all the powers of a state sheriff under the... Yeah, okay. But I'm just saying that he could well be wrong. And I actually think Judge Chabria was right, that he was wrong. Your agent was wrong here. But then, yeah, there might be a good faith argument. I just heard you to argue somehow that the published part of Judge Chabria's ruling here was incorrect. And I guess I just don't believe that. I think he was exactly right in what he said there. I agree with you. There's a whole separate question as to whether you ever got to suppression. But maybe you could move off of the state law violation thing and just get to the rest. Because I'm just not... I don't think it matters ultimately for you anyway, whether there was or wasn't a violation of state law. Well, I think that if there was a violation of law, I think it matters to the extent that it was a technical violation. It's not the fundamental violation that amounts to a Fourth Amendment violation. And this court has been very clear that that matters for two reasons. If it's a technical violation, that doesn't necessarily implicate the core of a Fourth Amendment, then suppression is not the remedy, unless the defendants can show that there was prejudice in the sense that there wouldn't have been a search warrant issued, or that it would have been conducted in a less abrasive way, or if there's evidence that shows that the agent in this case acted in a deliberate and intentional way to circumvent the rules. So we think that at most, if there was a violation of the statutory law here, it was a technical violation. I think that is certainly clear under this court's law. If you analogize it to the Rule 41 cases where you have in Luck and you have in Ritter cases where search warrants were issued by or obtained by somebody who was not authorized under Rule 41 to obtain the warrant, or where the state judge was not really authorized to issue a telephonic warrant under Rule 41, this court has said those mistakes are technical. They're not fundamental. So we look at whether there should be suppression. There shouldn't be unless prejudice or an intentional misconduct type of circumvention is proved. And Judge Chabria did not find that there was some kind of an intentional evasion of the federal magistrates here? No, I don't think he did. I mean, if you look at the order, and the orders are striking in the sense that if you look at the orders, there is a lot of use of the subjunctive. There may have been a violation. There may have been misleading. There may have been a lot. But at bottom, what Judge Chabria found after the Franks hearing, after listening to the testimony of Special Agent Carlson, was that there was no falsity, that there was nothing that he said that was wrong, and that at most he didn't know what was the law. He didn't know California state law. And in fact, not only did he not know, the state judges apparently did not know. And the Alameda County district attorneys did not know, which is why Judge Chabria seemed to think it was necessary to disseminate his decision very broadly. So we think that there was no intentional elision or circumvention of any rule, and there was no evidence that showed that there was prejudice. Let's talk about the artist. I don't know if I'm saying his name right. I think that's correct, Your Honor. Whether there was probable cause to support that warrant, because you are, I'm trying to figure out what your position was on the credit card part of it, right? That's kind of the most damning piece of information in the warrant, in the affidavit, rather. The observation of the counterfeit credit cards. Oh, so I think that... So you're not, you sort of say, we agree that that should be excised, because it was obtained in violation, that information was obtained in violation of the Fourth Amendment? No, so the position is a little bit nuanced. The position in the district court that the to be probable cause. And in fact, Judge Chabria actually agreed. He said, right after the Franks hearing, and this is on excerpts of record 143, 144, that the fact that you have artist being a felony fugitive, and the fact that he dropped the phone was enough to provide probable cause that that phone was going to provide evidence of his whereabouts. Okay, but that's the, let me just stop you there, because I certainly agree with that, but the problem is that the affidavit is not posed in those terms, right? It's a request to search the phone for evidence of crimes, not to locate a fugitive. And I guess when you take out the counterfeit credit cards part of it, I don't know that there's probable cause left to think that artist, Mr. Artist, was engaged in either identity theft or credit card fraud, whatever the crimes were that the agent was trying to investigate. Well, he had evaded arrest. I mean, there are crimes there too. And one of the, actually, so he was, there were several warrants that he was outstanding on, and those included identity theft. He also, the affidavit also says that he fled officers when they tried to apprehend him on April 5th, and that a corroborating witness said that he was conspiring with the Copkins in a conspiracy to commit credit card fraud and in constant communication, which was corroborated by his flight when the officers went. And the thing that I think is very important to remember too, is that probable cause, and this is what the Ninth Circuit has said in Brobst, doesn't require evidence that is enough to convict or even that it's higher than 50%. It's just a fair probability. It's actually a fairly low standard. And I point this court to... The confidential informant, I mean, that, there's no basis of knowledge offered. There's no information whatsoever about the reliability of that informant. And you're right. So you do need cooperation. And I guess the only cooperation you can point to is that he fled when... I mean, and there's a dispute over whether the officers even identified themselves as such, but why would his flight be corroboration of what the confidential informant told the agent? Well, it's corroboration because the defendant was, sorry, the corroborating witness, and this is not an anonymous tipster, a corroborating witness who's been working with the agent, said that he was working with Hopkins and he was currently basically engaged in crimes. And so the flight of the officers is a show of consciousness of guilt. And again, I point this court to Brobst, the Brobst case at 558 F. 3rd at 997, where this court says that probable cause just requires more than bare suspicion. So you have to have more than bare suspicion, but you don't even, quote, have to have a showing, even a showing that the officer's belief is more likely that true than false. And I think in this context, you have probable cause for the artist and also for the Hopkins warrants. But even if this court disagrees with that, there's still good faith. But when we turn to good faith, we then still excise the observation of the credit cards, right? Yes. No. Well, no, because you don't do that because in this situation, you don't have any evidence that Special Agent Carlson had any reason to believe that the credit card search was illegal at the time. But under our decisions in Vassey and Wanless, I thought we had held pretty categorically that if evidence was obtained in violation of the Fourth Amendment, it is not, and it's excluded, it's excised at the stage when we're trying to figure out does probable cause exist, that it also gets excised when we then review for good faith. Right. But yes, but even without that evidence, I think there's good faith. I mean, and I think the biggest evidence for that is that Judge Chabria excising that out so that there was probable cause. And he changed his mind, but the fact that he changed his mind, a very, very competent federal judge can change his mind about whether there's probable cause or not. That shows that a person who is a law enforcement agent held to a different standard would not look at this as a bare bones affidavit. And that is the standard under Leon. That is the standard under Davis. The exclusionary remedy is a judicially created remedy, and it should be. What are you talking about now, probable cause or good faith? I'm talking about good faith if there's no probable cause. So if this court finds, we disagree. We think that there is probable cause. But if this court were to say that there is no probable cause on the artist warrant, we still think that exclusion is not the appropriate remedy because there was good faith, because it was not a bare bones affidavit. And you have a situation where you have an agent who basically did what he thought he was allowed to. And this is supported by the federal law. He is supported by the training he received. And it's really supported by Judge Treiber's own decision where he said, you know, I think that there are a lot of things wrong here, but it's fundamentally it seems like there's an institutional misconception about the authority of state. You're talking about a different we're talking about probable cause. Just forget about the whole state law overlay. So just if we excise the observation of the counterfeit credit cards, all you've got is this, you know, a confidential informant with no information about their reliability, no information about the basis of knowledge and your so-called cooperation of his flight, which again, there's no connection between what the confidential information was relating to the agent and whatever their encounter was with him out on the liquor store. And that's it. And you're saying that a reasonable officer could think that on the issue in a warrant? I think so. And I think it also has to be I mean, I know you've talked about sort of the warrant being made out to look at certain crimes of identity fraud. But this is a fugitive task force officer who is fundamentally looking for the fugitive. And that's not what the warrant said. I am if you had if this agent had asked for a warrant, said, look, we've tried to find this guy. We almost had him. We have no idea where he is. But thank goodness we got the phone. And we think there's evidence on the phone that's going to help us track him down. Of course, there would be probable cause for that. That is definitely not what the warrant does. And I think that's maybe why Judge Chabria was thinking, yeah, well, maybe there's probable cause. But when you look at the warrant, it has nothing to do with tracking down a fugitive. It's all about we want to find evidence on the phone that he's committed these other crimes. Well, I think that the issue is, again, that if Judge Chabria would initially sort of think that there was enough and then maybe not, this does require a careful look and probable causes. And from the perspective of a law enforcement officer, that distinction, which was not really caught by the state judge, was something who issued the warrant and was something that Judge Chabria maybe was not caught by the state judge. The state judge was provided with unlawfully obtained evidence that definitely did support probable cause for the very purposes that the warrant was spelled out for. So I don't know how you can fault the judge that the state judge wasn't didn't do anything. I'm not faulting the state judge. Well, first of all, I'm not saying that the search was actually illegal. It's there's a distinction, which is that the government felt that it couldn't defend or rely on that because there wasn't enough proof to show that some other agent. Right. So as the case comes to us, we have to assume that it was illegally obtained. OK. Otherwise, you're going to have to have an evidentiary here. And it seems to me to flesh that out. So as it comes to us, we have to assume it was illegally obtained, should not have been in the warrant. And it can't be taken into account when we're assessing whether the officer had good faith to rely on the warrant. Well, when the officer is looking at the different sort of things that are in the affidavit, we believe that he had good faith in this case. And I think it's also important in looking, even though it's the probable cause that we can't strip that out from the what the Chabria called the foundational concern of the state law authority for the suppression. If you look at the order, Judge Chabria says that he's ordering suppression because not because of no good faith just on the probable cause, but there's a string of cumulative error type of notion. And so that that is also an inappropriate sort of application of the suppression remedy. And so we think that this court, even if it thinks that there is an issue about good faith, it can't just simply say that there was not good faith. It was inextricably bound. OK. You know, I apologize for having already taken you over your time. Maybe you could just address for a minute the other warrant as to whether it's probable. The Hopkins warrant. Yes. And I think that there was probable cause. This is as to the five, I think the issue is whether there was probable cause as to the 555 number being Hopkins's number. So this court, I think, can look very specifically to to paragraph eight of the affidavit. And this is under seal because there are safety issues. But this corroborates, it tells you where the cooperating witness got the number from, which is from you. No, I don't think I think you said that in your brief. I don't think that the redacted version of the warrant says that. Not the redacted version. I'm talking about the unredacted version. OK. Right, right. Yeah. No, the unredacted version of the of the warrant on it's on E.R. 516, paragraph eight. It tells you where Carlson got or the cooperating witness got the phone number from. And then it talks about that person and who is a known associate of Hopkins. And it talks about that person, you know, having the Nobel warrants for various things. And then later on, what we have corroborating that is that the number actually pops up on artist's phone. So all of that, I think, does corroborate the cooperating witnesses information in this case. And certainly seems to me to show that Special Agent Carlson had a good faith reliance on that and felt that that was corroborative. So even again, we think that this establishes public cause, which is a low standard. But even if it didn't, we think that this is certainly enough for good faith. OK, we'll give you a couple of minutes for rebuttal. Let's hear from counsel for the defendants. And I assume you're going to divide it evenly. Is that the point? Yes, Your Honor. OK, well, unevenly. Oh, you stick rule talks more than me, so he'll get an extra minute if that's all right with Your Honor. Of course. John Jordan, on behalf of my client, Danelle Artis, in this case. So, Your Honor, I disagree strongly with many of the points put by the government. I think this is really an extraordinary case. Yes, Judge Chivrey didn't consider the March 24th, 2016 search. That search was conducted again by the same officer here, Agent Carlson. And my motion to suppress, filed in the district court, set out that according to the door of the girlfriend of Mr. Artis, which he claimed in a high-climb area, the Tenderloin of San Francisco, was unlocked. He knocked and it magically opened. And the agents then went in and did it, suddenly very concerned for Mr. Artis's health. They did a search of the entire apartment, including photographing credit cards. It's a clearly illegal search, clearly violating Stiglitz. I don't think we can make a judgment on this record as to whether that aspect of the search was illegal. I think it's rather the observation of the counterfeit credit cards that the government has refused to defend. Your Honor, let's, if I just focus briefly on the warrant itself, as Your Honor picked out, this is the warrant itself. I think it's five pages. There's one page, you know, that has the so-called facts for the probable cause. There's information in there that there are warrants. The numbers of the warrants, the courts the warrants were issued out of, the dates of the warrants, none of that's included. There's a bold statement by an informant for which there was absolutely no indicia of reliability that my defendant and Mr. Gould's defendant are engaged in some kind of conspiracy. Where, when, what state, what's going on, the basis for that, none of it's there. It's just one bold accusation after another that really, Your Honor, applying well-known Ninth Circuit case law can knock out each and every one. At most, you're left with, as Your Honor pointed out, an inference that there are perhaps valid warrants out for him. So therefore we can search for him. That's nowhere put in the warrant. So there's no guidance given to anyone executing the warrant. That's all he's looking for. Why isn't the warrant perhaps properly construed as having a dual purpose, both to get evidence of credit card fraud or identity theft, whatever it was, and to get fugitive? Either one of them should be in there, Your Honor, which neither one of them is. Again, to give guidance to whoever... No, no, I'm saying, why can't it be viewed as seeking evidence as to both of those purposes? Because there is a lot of evidence actually to support the notion that this guy is a fugitive, that he fled from us. We can't, we couldn't apprehend him. So there's no reason to put that in there if all you're trying to do is get evidence of credit card fraud, right? Well, Your Honor, I think you have to put in a basis, under well-known Ninth Circuit law, you have to put in some basis for either of them to give guidance to the officers who are going to be executing the search warrant as to what to do. Switching, if I could, Your Honor, because my time is so limited, to the good faith basis, which I think is the real issue here, all right? At least I hope it is. Remember when Officer Carlson gave this warrant to the state judge, I believe he misled that judge. He said in his warrant that he was going to do this in conjunction with state police officers, which would make it a lawful warrant if a state law officer agent was there for the execution of it. He didn't do that. He had no intention of doing that. He never mentioned that this long evidentiary hearing, any name of any state agent that was going to help him authorize the search. And then we get the extraordinary situation of after multiple briefings in this case, several hearings, a full-blown Franks hearing where Judge Chabrier directly asked Agent Carlson, did you execute the search for Mr. Artis' phone? And he said, yes. It turns out that's false. We find out later that he didn't execute the search, that another FBI agent who was nowhere cross-designated did this. And that was a critical issue at the time, whether a cross-designated agent, state, federal task force could execute it. When all along, Agent Carlson didn't execute the search warrant. So I think there's multiple. What does that, what does that make a difference to though? That only makes a difference as to whether or not state law was complied with, right? I think it also goes into whether you're going to apply Leon, whether the, what are the issues is whether the affiant misled the magistrate. No, but the misdemeanor has to be on a material matter. What's material about that? Well, I think it's material in that it shows a disregard for the law. For what? For state law? It's still law, Your Honor. It's a disregard. It only goes to a violation of state law. So what, you know, if the government is right that we're only talking about a direct violation of the fourth amendment, what difference does the violation of state law make? Well, Your Honor, I just think it goes into the calculus of whether or not the agent was being careful. I'll cite to the, uh, the nine. But you don't, you know, you don't, uh, quash a search pursuant to a warrant because somebody is not careful. I mean, you have to be more factual than that. No, Your Honor. But here where he's not careful about that, where he writes a warrant, where he doesn't put in anything about reliability of informants. So you're saying because he was not careful about that, he wasn't careful about something else? I'm saying he was not careful in a series of things. As Judge Chavry pointed out, there was a series of violations here. And I think Your Honor's can consider that in deciding whether to rely here. I don't, I don't, I think Judge Tashima is, is right that the Leon inquiry focuses on the, whether the officer is justified on and relying on the facial validity of the warrant as establishing probable cause and, you know, being sufficiently specific and the like. It doesn't have to, anything to do with all of these other collateral matters that relate to the, how he conducted the investigation. Well, I think here, Your Honor, the agent wasn't relying in good faith on a, an affidavit since again, it's so bare bones, it's so one page. There's no finding by Judge Chavry that any of the information that the agent included in the affidavit was false. Was there? I know that there was part that needed to be excised, but that, but the agent, I think didn't find out about that until later. Right. So it's not like, I mean, there are situations you're right, where the agent, you know, just that blatantly false, gets the magistrate to issue the warrant. You can't then say, oh, well, if that all turned out to be false, I still relied in good faith on the warrant. I get that, but that, that's not our situation. No, Your Honor, it isn't, but I think there's also situations where the court has recognized that if an agent drafts a warrant that is so facially lacking in probable cause that he shouldn't be allowed to argue in good faith. Oh, I thought this warrant was going to be good, particularly in these situation here, where again, he didn't go to a federal magistrate. He didn't show his warrant to an assistant U.S. attorney to have it reviewed. Instead, he took this step to go to state court. So I think all that calculus together would justify suppressing the issue here and not applying the warrant. Leon, I think I have to. Yes, you do have to see the, the lectern there. Thank you very much. Good afternoon, Your Honors. My name is Stephen Grewal. May it please the court. I also represented Mr. Hopkins below at the district court level, and I'm just going to jump right in it and carry the baton that my colleague was brought thus far. I think he was right, what Judge Chabry observed, that this was not just one isolated event where something happened here or some defect was here, but the judge said that there was a systematic pattern of recklessness by Stoney Carlson in putting together these two warrants that he presented to the state magistrates. And he said, actually, on page six of the excerpt of records, he says, Carlson's general conduct in this case, as well as his testimony at the evidentiary hearing, shows that he is neither well-trained nor particularly concerned with complying with the law in conducting his enforcement activities. Right. But maybe respond to the question I posed to your colleague, which is that the Leon good faith inquiry, when you're talking about an agent who did get a warrant issued to him, I think that you're sort of limited to the four corners of what Fourth Amendment law dictate in terms of the facial validity of the warrant. So all of the other stuff that Judge Chabry was noting, and maybe with some justification about the sloppiness of the way that the agent conducted the investigation and didn't communicate with, you know, the AUSA, whatever. I don't see how any of that has anything to do with Leon. Leon has four factors. One where there's no longer a neutral magistrate, one where there's been material misrepresentation, none of those, but the two others apply. And that is a facially defective warrant. Right. That has nothing to do with what we just talked about either. And one where there is no probable cause that any objective, reasonable agent can assume that it is a valid warrant. That's what I'm saying. All of the stuff that you were just alluding to and that Judge Chabry relied on has nothing to do with the inquiry that Leon demands. It has to do with basically the four corners of the warrant. And when Judge Chabry made the factual finding that there was no reliable evidence to make the informant reliable, that that took it into that category, Your Honor, where nobody could rely on. Let's talk about probable cause for your client's warrant, because there was a client and then there's the corroboration of that. You're right. There's no explanation as to why that informant would be reliable on that point. But there is corroboration in the sense that the number shows up on, you know, his, on your client's phone. I've not seen, I have a redacted version, so I have not seen everything, but I would respectfully disagree that there is any corroboration because one of the things that Mr. Carlson never talked about in his warrant was the fact that the area code that came up was 832, which is a Texas area code, not an area code in the Bay Area or California for that matter. So that, in my opinion, slants against corroboration. No, no, no. Corroboration in the sense that the concern is that you have an unidentified informant who says, this number belongs to your client. You know, I mean, the person could have just made up any number, right? We'd have no way of knowing that they were reliably ascribing that number to your, to your client. I'm just saying that when your, your client's good friend, artist, you know, that number calls his phone. That seems to me some corroboration that this isn't just some random made up number. No, but I think it has a significance, Your Honor, when we look at how it's displayed in the search warrant, which is paragraph 10, the agent told the calls coming in with that particular number. That turned out to be untrue. And he did his own declaration, which is part of the record where he, and I, I believe I brought it with me here, but what he says, it's in 332 of the excerpt of records, he says in his paragraphs 15 and 16, that he sees the number first on the cell phone. And then he goes to the informant and says, is that the number? That's a different scenario I would submit than the informant on his own saying, this is the number. The sequence of events is not as portrayed in the affidavit. It's, it's the other sequence, as he later talked about in the declaration. So, so I would respectfully say that the corroboration, which is already thin and already suspect, is even further lessened in value. Say again, I don't have that page in front of me. What is the, you should say it's an excerpt of record 332. It's a declaration from Mr. Carlson that he filed right before we had the evidentiary hearing in the case. Wait, you know what? I do have that page. What, what paragraph? Paragraph 16 and 17. Okay. There's a difference in, there's a difference in sequence in the events that he later then comes back and changes in this declaration as to how he presented the information of the telephone number to the informant. Well, it was not the informant saying on his own to agent Carlson, this is the number for Mr. Hopkins. I would say actually, wait, we don't know that from this declaration. Why are you assuming, I don't know what you're assuming from this, but all this tells me is that, um, the, uh, the agent saw the number on the phone, right? And then on some separate occasion, presumably later in time, this, uh, informant, um, informed him that that number corresponded to your client. That's paragraph, he says on paragraph 16, that on April 6th, he then went to the informant, uh, and the informant advised me that the current number, uh, for the Hopkins was the one locked on the screen. So why isn't that provide some independent cooperation that these two things are, are in fact. Well, there is the connection, but I, I am saying your honor, that in the totality of the circumstances of this case, with all the observations that were made by, uh, judge Chabria, that that standing alone is unreliable. Uh, given the fact that there is nothing further beyond that corroborating this particular witness or this particular informant, it's insufficient in my opinion, and the judge made the factual finding that he did not see anything that made it reliable that that was the number associated with Mr. Hopkins. Okay. But then the government says, all right, well, maybe you're, even if you're right on that, we nonetheless have, um, you know, I mean, the magistrate signed off on that. Why would the agent, uh, uh, question that as being so facially, um, lacking the probable cause that he couldn't rely on it? Because I think your honor, when you look at, again, with, with the totality of the circumstances and what judge Chabria observed and made the findings that he, he came to after seeing agent Hopkins or agent, uh, uh, Carlson testify after seeing the declarations after, uh, hearing from counsel, it was his opinion that the system that this particular, uh, these two declarations were so fraught with systematic error and recklessness that, uh, he could not, uh, say that good faith applied in this particular case to save the warrant. And I, and I think one of the things that judge talked about, uh, that I was arrested on April 14th, uh, April 11th, 2016. The state of the feds filed a complaint three days later. He stayed in state custody for a period of time and then was indicted federally and brought over to the Northern district of California on the indictment in February of 2017. I got involved in the case and then, uh, there was all the discovery that of thousands of pages, pages, including some cell site simulator, affidavits and search warrants that were done for the other code defendants by, uh, uh, the U S attorney and the agent working at the case, but this particular warrant was not included in it. Mr. Carlson's was not, and it was only through my work as a defense attorney that I was able to unearth that and then get this warrant and then ultimately having to, you know, deal with it as we are right now. Uh, I would say that that's an indicator of bad faith. I don't know if it was because the agent was concerned about the lack of the probable cause that he had in the warrant or because he was trying to, uh, hide the fact that a cell site simulator was used in order to find Mr., uh, Mr. Hopkins. Um, and I think that that was one of the reasons why, uh, it took so long to get this particular information. And certainly it was one of the things that judge cited to in, uh, coming to this conclusion that Leon did not apply and that suppression was the remedy on this particular case. When you have this systematic pattern of recklessness or there, you know, there, I say bad faith by the agent. Any other questions by your honors? Nope. Okay. Very good. Thank you very much. Let's put two minutes on the clock and we're going to hold you to that. So try to be concise. Yes. Thank you, Your Honor. So the California law may govern what state judges can do, but the suppression order here was directed at the actions of special agent Carlson. And even if California law is at issue here, this court, that's a question that really California state judges or state courts should be looking at. Um, in this case, uh, what we have is we have judge Chabria making a ruling about what was authorized under California law and disseminating that. So that should not stand. And even if there was a violation of California law, we maintain that that was not a violation made by special agent Carlson. Um, but by the state court judges and any kind of violation here does not amount to a fourth amendment violation. We think this is fundamental. This was the entire foundational error of judge Chabria's two orders. He calls it the foundational order in his suppression order, the unpublished one. Um, so we think that that merits correction. The other thing that is a very fundamental error in judge Chabria's suppression orders is his application of the suppression remedy and exclusionary remedy. I don't think I have to talk too much about that because as this court has, or the panel has already talked about, um, he wasn't applying the Leon factors. He was looking much broader and he was looking into this cumulative error, importing a cumulative error, kind of a doctrine into the suppression area, which is not supported under Davis. It's not supported under Leon. Um, and it's not consistent with this court's decisions and Henderson and Dreyer in which even though there are fundamental errors because they were institutional errors, uh, in the rule 41 process, uh, they, they, this court said in, in, in bank decision and Dreyer, it was going to allow the government to self correct based upon a new finding of law about what actually the clarification of the legal scope. Um, so we find that in this case there wasn't a fundamental error and so there should not be, um, any suppression. We also think that there is probable cause. We again point this court to paragraph eight of the warrant, the unredacted warrant. Um, this is all in volume three. Um, and we asked this court to reverse. Okay. Thank you very much. Counsel case just argued is submitted.
judges: Tashima, Watford, Robreno